RUTH BENDETOVITCH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bendetovitch v. Commissioner
Docket No. 1654-92
United States Tax Court
T.C. Memo 1993-443; 1993 Tax Ct. Memo LEXIS 455; 66 T.C.M. (CCH) 825; September 23, 1993, Filed *455 Decision will be entered under Rule 155. Ruth Bendetovitch, pro se. For respondent: Melanie M. Garger. POWELL
POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioner's Federal income tax and an addition to tax under section 6651(a)(1) in the respective amounts of $ 3,242 and $ 711 for the taxable year 1986. Petitioner filed a timely petition with the Court. At the time the petition was filed, petitioner resided in New York, New York. The primary issue is whether petitioner was engaged in a trade or business as a financial consultant during 1986. The facts may be summarized as follows. Petitioner has a MBA and Doctorate in Finance. From 1972 to 1977 she was a Lecturer at New York University. *456 From 1977 through 1979, she was employed by the Office of the Treasurer of the Hearst Corporation. In 1981, she joined GTE Investment Management Corporation (GTE) as a portfolio manager for GTE's pension fund. During 1982, GTE decided to move the pension funds out of the corporation, and it placed the funds with Aetna Life Insurance Company (Aetna). Petitioner moved from GTE to Aetna and continued to manage the fund. In 1984, she became dissatisfied with Aetna and left. In 1985, petitioner was employed by Pace University (Pace), Lubin Graduate School of Business, as a full-time Assistant Professor of Finance. Pace supplied her with an office and did not require that she keep an office in her home. Pace has three campus sites -- Downtown Manhattan, Midtown Manhattan, and Pleasantville, New York. Petitioner taught courses at the three sites, using her automobile to travel between her home and the first site and then to the other sites. She left Pace in 1987. After leaving Aetna, petitioner wanted to start her own investment management business. In 1984, she registered as a Investment Adviser with the Securities and Exchange Commission. She reregistered in 1989. She had *457 business cards printed in the name of "Ruth Bendetovitch & Co. Investment Management Consultant." The address listed is petitioner's home. She subscribed to various investment services such as Value Line and Daily Graph, and newspapers such as Wall Street Journal and New York Times. Petitioner contacted various corporations to obtain funds of over $ 5 million for management. In spite of her attempts to get clients, petitioner had no client money under management during 1984, 1985, 1986, 1987, and 1988 and received no consultant fees during these years. Since 1984, petitioner, her son, and her mother have lived in an apartment that consisted of one bedroom, a small kitchen, bathroom, and living room. The apartment occupied 600 square feet. In the living room, petitioner had a "double-sided wall unit" installed to separate an area where she worked from the other living areas. Petitioner has a relatively small ($ 10-20,000) amount of personal assets that she invests. For 1986 she reported interest income of slightly over $ 1,000 and dividend income of $ 392. She also reported a long-term capital gain in the amount of $ 6,190. Petitioner invests in securities for the long term; *458 she does not actively trade securities. On her 1986 income tax return, petitioner deducted one-third of the expenses of the apartment either as investment expenses (Schedule A), employee expenses (Schedule A), or business expenses (Schedule C). For example, the total rent was $ 9,138 and she deducted one-third, allocating $ 2,358 to the alleged investment business, $ 100 to investment expenses, and $ 588 to employee business expenses. On the Schedule C for 1986, petitioner deducted the following expenses: Transportation
$ 2,742 Depreciation
3,467
Dues and Publications
838
Laundry and Cleaning
420
Legal services
822
Office expense
188
Rent on business property
2,358
Supplies
156
Travel and entertainment
1,401
Utilities and telephone
856
Computer software
180
Books
88
Clerical help
468
$ 13,984
The depreciation expense includes a car, computer, and file cabinets. The transportation expense includes 70 percent of the oil, gas, insurance, garage, etc. On Schedule A she deducted "Professor's Expense" of $ 2,257 and "Investment Expense" of $ 666. Although there is no breakdown of these expenses, presumably they include allocated expenses for the apartment, *459 depreciation, transportation, etc. [2] Petitioner also deducted medical payments on Schedule A in the amount of $ 10,501, which included $ 478 spent for dentures for her mother. Petitioner's 1986 Federal income tax return, after an automatic extension, was due to be filed on August 15, 1987. That return was not filed until May 4, 1989. Upon examination of the 1986 return, respondent allowed $ 463 as an employee business expense for transportation expenses incurred by petitioner in traveling between the different campus sites. Respondent also allowed automobile depreciation in the amount of $ 294 for the same reason. With regard to the travel expenses claimed, respondent allowed $ 316 as an employee business expense on Schedule A. All of the deductions claimed on Schedule C and the other investment and professor's expenses claimed on Schedule A were disallowed. Respondent also disallowed *460 $ 478 of the medical expenses claimed on Schedule A. 1. Investment Business Expenses
Section 162(a) allows a deduction for all ordinary and necessary business expenses incurred in carrying on a trade or business. With respect to the deductions claimed by petitioner that were allocated to the investment management business on petitioner's Schedule C, respondent contends that petitioner was not engaged in a trade or business, and, therefore, the expenses claimed with respect to that activity are not deductible. The issue whether a taxpayer is engaged in a trade or business is primarily factual. Commissioner v. Heininger, 320 U.S. 467, 475 (1943). The burden of establishing that a trade or business exists generally rests on the taxpayer. Welch v. Helvering, 290 U.S. 111, 115 (1933). While neither the Code nor the regulations defines a trade or business, in Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987), the Supreme Court noted "that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary *461 purpose for engaging in the activity must be for income or profit." The concept of a trade or business does not encompass every activity, but rather is used in the "realistic and practical sense of a going trade or business." Koons v. Commissioner, 35 T.C. 1092, 1100 (1961). Petitioner maintains that she devoted approximately 15 hours a week to her teaching activities and another 30 hours to her investment management activities. While we have difficulty in accepting this considering her full-time teaching obligations and the travel between campus sites, the time spent on an activity, standing alone, is insufficient to show that a taxpayer is engaged in a trade or business. Bert v. Commissioner, T.C. Memo. 1989-503. When a taxpayer claims to be in a trade or business of selling services, at a minimum, he or she must establish that there are clients or at least a reasonable prospect of getting clients in the future.[3] A client base or prospective client base is totally lacking here. While petitioner claims that she has a list of prospective clients, she did not call any witnesses, and, indeed, refused to disclose the *462 list to respondent during discovery. We infer that the persons on that list, if they had been called as witnesses, would not have aided petitioner's cause. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). The most that can be said about petitioner's investment management activities is that petitioner hoped some day to obtain clients and that some day she would be able to support herself from these activities. *463 [4] That day had not arrived during the year before the Court, and the expenses incurred are not deductible under section 162(a). Compare Richmond Television Corp. v. United States, 345 F.2d 901 (4th Cir. 1965), vacated and remanded on other grounds 382 U.S. 68 (1965); Bennett Paper Corp. v. Commissioner, 78 T.C. 458 (1982), affd. 699 F.2d 450 (8th Cir. 1983). Petitioner has not established that she was in the trade or business of providing investment management services. [5]
*464 2. Investment and Employee Expenses
While we reject petitioner's argument that her investment management activity constituted a trade or business, petitioner had other activities that merit some discussion. First, with regard to her business of teaching, petitioner claimed expenses of her apartment. Clearly, however, Pace was petitioner's principal place of business with regard to her teaching activity and these deductions are barred by section 280A. Commissioner v. Soliman, 506 U.S.   , 113 S. Ct. 701 (1993). The apartment expenses are not allowed under section 280A with regard to her investment activities. Moller v. United States, 721 F.2d 810 (Fed. Cir. 1983). With respect to the automobile expenses, including the cost of the garage and depreciation, these expenses, to the extent that they were not allowed by respondent, were personal expenses and not deductible. Sec. 262. Petitioner, however, claimed one group of expenses that cause some concern. She claimed aliquot parts of subscriptions that would appear to relate to her activities as a professor and as an investor. See secs. 162(a), 212. While *465 the record is unclear with regard to some of these expenses, others appear to be clearly deductible. Using our judgment, we hold that petitioner is entitled to deduct $ 500 for subscriptions on Schedule A. See Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). [6]
3. Medical Expense
Respondent disallowed $ 478 of the medical expenses claimed. Petitioner claims that she paid cash for a set of dentures for her mother who was her dependent. We accept petitioner's testimony on this point, and find that petitioner is entitled to an additional medical deduction in the amount of $ 478. 4. Addition to Tax
Section 6651(a)(1) provides for an addition to tax if a return required *466 to be filed is not timely filed unless it is established that the failure is due to reasonable cause and not due to willful neglect. There is no question here that petitioner's 1986 return was not timely filed. Petitioner contends that she was without employment, her mother was ill, and "Things were not easy" during this period. As soon as she "learned that * * * [she] might have a job * * * [she] prepared the return and filed it." Willful neglect means "a conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985). Reasonable cause means the taxpayer has exercised "'ordinary business care and prudence' but nevertheless * * * [he or she] was 'unable to file the return within the prescribed time.'" United States v. Boyle, supra at 246 (quoting 26 C.F.R. 301.6651-1(c)(1) (1984)). Petitioner has not shown reasonable cause. Rather, it appears that her failure to timely file the return was due to willful neglect. We sustain respondent's determination on this issue. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Although not before the Court, petitioner deducted similar expenses on her 1984, 1985, and 1987 Federal income tax returns.↩
3. In Commissioner v. Groetzinger, 480 U.S. 23↩ (1987), the Supreme Court rejected the test that to be in a trade or business involves holding one's self out to others as engaged in selling goods or services. Nonetheless, when the alleged business that a taxpayer is engaged in involves selling services, there must be the reasonable prospect that someone will purchase the services offered and that the services offered are marketable. This is the crucial point here.
4. Petitioner also must have realized that she was swimming up a waterfall. She was aware that few, if any, corporations used money managers who are in business by themselves. Furthermore, it does not appear that petitioner sought or was interested in money management for individuals.↩
5. It also should be noted that, as far as we can tell, petitioner maintained no books and records of her alleged investment management business apart from her own records of personal expenditures. She further admits that her allocation of the expenses was "arbitrary."↩
6. It may be that petitioner used her computer in her investment and professorial activities. There are, however, restrictions on the deductibility of depreciation for computers contained in sec. 280F(b), and petitioner has not shown that the restrictions do not apply. See, e.g., sec. 280F(d)(3).↩